IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT MURPHY, )
)
      Plaintiff, )
)
vs. ) Case No. 14-CV-378-SMY-DGW
)
PROFESSIONAL TRANSPORTATION, )
INC. )
      Defendant. )

# MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 114). Plaintiff Robert Murphy is proceeding on a single Count Complaint against Defendant Professional Transportation, Inc. ("PTI"), alleging violations of the Illinois Prevailing Wage Act ("IPWA"), 820 ILCS 130/1, *et seq*. (Doc. 14).[1] For the following reasons, summary judgment is **GRANTED**.

## Background

PTI is a corporation that provides transportation services for railroads. (Doc. 81 at 5). Plaintiff Robert Murphy was one of a group of drivers employed by PTI who were assigned to provide ground transportation services to the Union Pacific Railroad, allegedly in connection with track replacement work on the Illinois High Speed Rail Project. (Doc. 14 at ¶ 11).

### The High Speed Rail Project

The Illinois High Speed Rail Project was established to replace and upgrade existing rail track infrastructure between St. Louis and Chicago to accommodate high speed trains travelling

---

[1] The case was filed as a putative class action with John Garecht as the original named plaintiff. Plaintiff Murphy was substituted as the named plaintiff after Garecht's death. (Doc. 108). The Court denied class certification (Doc. 121), leaving Murphy as the sole remaining plaintiff.

up to 110 miles per hour. On December 10, 2010, PTI entered into a "Long Haul, Yard and Shuttle Transportation Service" agreement to provide transport services to the Union Pacific Railroad Company ("Union Pacific). (Doc. 81-6 at 4-19). Union Pacific and the Illinois Department of Transportation ("IDOT"), acting on behalf of the State of Illinois, entered into a contract for the construction of the High Speed Rail Project (The High Speed Rail 2A Construction Agreement hereinafter referred to as the "Agreement" or "Construction Agreement") on March 4, 2011. (Doc. 81-3 at 12-131). The Construction Agreement is the only contract upon which Murphy bases his claim. (Doc. 115-2 at 15).

The Construction Agreement contains a number of references to federal money or federal law. In the recitals, it states that Union Pacific and IDOT had applied for funding from the ARRA (American Recovery and Reinvestment Act of 2009, Pub.L. 111–5) high speed rail appropriation and that IDOT had been selected to receive approximately $1.1 billion for the High Speed Rail Project. (Doc. 81-3 at 12). The Agreement explicitly requires compliance with a number of federal statutes and regulations. (*Id.* at 58).

Paragraph E in Exhibit J to the Agreement states that Union Pacific "shall comply with the provisions of 49 USC §24405(c)(2) with respect to the payment of prevailing wages with respect to the [High Speed Rail] Project consistent with the provisions of 49 USC §24312[.]" (*Id.*). Section 24312 mandates that laborers and mechanics "be paid wages not less than those prevailing on similar construction in the locality, as determined by the Secretary of Labor under sections 3141-3144, 3146, and 3147 of title 40." Paragraph E further provides that the federal prevailing wage regulations and wage rates "established for purposes of this Agreement pursuant to the rates provided by the Department of Labor and certain applicable regulations" are incorporated into the Construction Agreement as an exhibit. (*Id.*). This language is consistent

with the ARRA itself, which requires that "[n]otwithstanding any other provision of law and in a manner consistent with other provisions in this Act, all laborers and mechanics employed by contractors and subcontractors on projects funded directly by or assisted in whole or in part by and through the Federal Government pursuant to this Act shall be paid wages at rates not less than those prevailing on projects of a character similar in the locality as determined by the Secretary of Labor in accordance with subchapter IV of chapter 31 of title 40." Pub.L. 111–5 at § 1606.

Additionally, IDOT took the position that this was a federal construction project and that federal (rather than state) prevailing wage requirements applied. In that vein Acting Deputy Director of IDOT George Weber advised Union Pacific of IDOT's determination that, because the High Speed Rail Project would be "based off of federal funds, [Union Pacific] should use the federal prevailing wage rates." (Doc. 81-5 at 7).

**The Job**

Plaintiff Murphy was employed by PTI providing transportation services for train crews and equipment, allegedly in connection with the High Speed Rail Project. In Illinois, he transported train crews between the hotel where they were staying and the place where the track replacement train was at the time, followed the train as it moved, and took the crew to and from lunch. (Deposition of Robert Murphy, Doc. 115-1 at 43, 46-47, 58-61). He would also transport supplies and sometimes equipment, including water, toiletries, and an end-of-train device ("EOT"). (*Id.* at 43-44). Additionally, he sometimes functioned as a "blocker" at uncontrolled railroad crossings, placing his vehicle across the lanes and directing traffic. He could not recall how many times he had done so in the State of Illinois. (*Id.* at 41, 43).

## The Illinois Prevailing Wage Act

The IPWA "applies to the wages of laborers, mechanics and other workers employed in any public works, as hereinafter defined, by any public body and to anyone under contracts for public works." 820 ILCS 130/2. "Public works" is defined as "all fixed works constructed or demolished by any public body, or paid for wholly or in part out of public funds[,]" and includes "all projects financed in whole or in part with bonds, grants, loans, or other funds made available by or through the State or any of its political subdivisions[.]" *Id.* "Public body" includes the State of Illinois "or any officer, board or commission of the State or any political subdivision or department thereof, or any institution supported in whole or in part by public funds[.]" *Id.*

The IPWA contains two additional limitations on its application. The first creates an exemption for "Federal construction projects which require a prevailing wage determination by the United States Secretary of Labor." 820 ILCS 130/11. The second limits its application to certain types of workers on covered projects, specifically:

> laborers, workers and mechanics as are directly employed by contractors or subcontractors in actual construction work on the site of the building or construction job, and laborers, workers and mechanics engaged in the transportation of materials and equipment to or from the site, but not including the transportation by the sellers and suppliers or the manufacture or processing of materials or equipment, in the execution of any contract or contracts for public works with any public body[.]

820 ILCS 130/3. The statute requires that covered workers on covered projects be paid no less than the "general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed[.]" 820 ILCS 130/3.

The Illinois Department of Labor ("IDOL") periodically publishes listings of the prevailing wage by county and job classification.[2] The job classifications vary by county and the

---
[2] Available at https://www.illinois.gov/idol/Laws-Rules/CONMED/Pages/Rates.aspx

listings include the types of work performed by each classification. Prior to starting a project, the public body awarding the contract is required to "ascertain the general prevailing rate of hourly wages in the locality in which the work is to be performed, for each craft or type of worker or mechanic needed to execute the contract" or it may request that the IDOL do so. 820 ILCS 130/4(a). IDOL's published prevailing wage rate documents direct that for classifications not otherwise set out or for tasks not subject to one of the stated classifications, IDOL should be contacted to make a determination. Factors to be considered in determining similarity of work include the requisite skills, training, and knowledge. *Illinois Landscape Contractors Ass'n v. Dep't of Labor,* 372 Ill. App. 3d 912, 923, 866 N.E.2d 592, 602 (2007). The statute also provides for both administrative and judicial review of prevailing wage determinations. 820 ILCS 130/9.

The IPWA provides a cause of action for any covered laborer, worker or mechanic "who is paid for his services in a sum less than the stipulated rates for work done under such contract" for the difference there may be between the amount paid and the stipulated rate, together with costs and attorney's fees. 820 ILCS 130/11. A violator is liable to the state for a penalty of 20% percent of any such underpayment, and a plaintiff is entitled to a punitive damage award of 2% of the penalty for each month during which such underpayments remain unpaid. *Id.*

## Legal Standard

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine

dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A party is entitled to judgment as a matter of law where the non-movant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

## Discussion

The dispositive question is whether the High Speed Rail Project qualifies as a federal construction project requiring a prevailing wage determination by the United States Secretary of Labor. If so, the project as a whole is exempt from the requirements of the IPWA and Murphy's claim for violation of the IPWA fails.[3]

The primary goal of statutory construction is to determine and give effect to the legislature's intent, and the best evidence of intent is the plain meaning of the language. *People v. Powell*, 839 N.E.2d 1008 (Ill. 2005). That said, "federal construction project" is not defined in the IPWA. Murphy asserts that it is a "term of art" under the Davis-Bacon Act (40 U.S.C. § 3142(a)) and requires that the federal government be a party to a construction agreement in order for a project to qualify as a federal construction project. (Doc. 90 at 6-7). But § 3142(a) offers no such definition. It simply sets the scope of the Davis-Bacon Act itself, limiting its application to contracts where the federal government or District of Columbia is a party.

The plain meaning of "federal construction project" is simple and straight forward – a construction project having to do with, relating to or involving the federal government in some way. In this case, the federal government awarded over a billion dollars in grant money and

---

[3] The Court is unaware of any decision in which an Illinois court has considered the definition or boundaries of the federal construction project exemption, and therefore must analyze the issue as it expects the Illinois Supreme Court would if it were deciding the case. *Carter v. Tennant Co.*, 383 F.3d 673, 682 (7th Cir. 2004).

imposed significant federal compliance requirements on the project. While Murphy suggests the statutory term "federal construction project" requires that the federal government actually be a party to the project contract, there is nothing in the text itself to suggest such a narrow reading. The only limitation is that it be a project requiring a prevailing wage determination by the US Secretary of Labor.

Essentially, Murphy would have the Court treat the phrases, "federal construction project requiring a prevailing wage determination by the United States Secretary of Labor" and "project falling within the original scope of the Davis-Bacon Act" as synonymous. They are not one and the same. The ARRA takes the Davis-Bacon prevailing wage determination mechanism and expands its application to projects funded or assisted (in whole or in part) by federal funds allocated pursuant to the ARRA.

Murphy argues that the drafters of the IPWA could only have intended the federal construction project exemption to apply to Davis-Bacon Act projects, which were the only projects requiring a determination by the federal Secretary of Labor at that time. However, the IPWA has been amended since the passage of the ARRA (Pub. Act 96–0058, effective January 1, 2010), and the legislature has left the federal project exemption undisturbed.

The lack of action to change or clarify IPWA's federal construction project exemption is significant in light of the fact that at least two Illinois State agencies have taken the position that a construction project that involves any federal funding requiring a prevailing wage determination by the United States Department of Labor is exempt from the IPWA. First, previously discussed above, relative to the project in question, IDOT determined that because the project was federally funded, it was correct to use federal, rather than state prevailing wage law. (Doc. 81-5 at 7).

IDOT's determination was in keeping with IDOL's standing interpretation of the interaction between state and federal prevailing wage law.  In an opinion letter dated March 29, 1993, the Illinois Attorney General's Office noted that "the [Illinois] Department [of Labor] has taken the position that the Illinois [Prevailing Wage] Act does not apply any time the U.S. Secretary of Labor makes prevailing wage determinations."  1993 WL 107971, at *6 (Ill. A.G. Mar. 29, 1993).  While opinion letters are not binding on a federal court (nor even entitled to deference), they are "entitled to respect ... to the extent that [they] have the power to persuade[.]" *CenTra, Inc. v. Cent. States, Se. And Sw. Areas Pension Fund*, 578 F.3d 592, 601 (7th Cir. 2009) *quoting Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).  If this position was as contrary to the intent of the IPWA as Murphy claims, it's reasonable to expect there to have been some effort to address it by statutory or regulatory process before now.  Given the absence of any such effort, the Court finds IDOL's position, as expressed by the Illinois Attorney General, to be persuasive as to the proper interpretation of the statute's federal construction project exemption.

Reading the federal construction project exemption to include ARRA projects is also consistent with the purpose of having such an exemption.  The only reason to have an exemption for projects requiring a federal prevailing-wage determination is to prevent projects from being subject to two sets of prevailing wage requirements, including two different processes for making and challenging prevailing wage determinations.  Thus, the exemption language is most logically an expression of legislative desire to avoid overlap and duplication of effort.  That end is best served by the natural reading of the statutory language to include projects such as the one at issue in this case.

Illinois Supreme Court jurisprudence suggests that it would reach the same legal

conclusion in this situation. In *Hayen v. Ogle Cty.*, 463 N.E.2d 124 (1984), the Illinois Supreme Court noted that the IPWA's federal construction project exemption functions to avoid conflict between state and federal prevailing wage laws:

> [A]ny danger of potential conflict between the Illinois Prevailing Wage Act and the Davis-Bacon Act is prevented by the State Act which provides that "[t]he provisions of this Act shall not be applicable to Federal construction projects which require a prevailing wage determination by the United States Secretary of Labor" [820 ILCS 130/11]. The possibility of conflict is so remote that it should be dealt with only in a case presenting the conflict, if one should arise[.]

*Id.* at 129. This is not one of those remote cases. There is no conflict here between federal prevailing wage requirements imposed by the ARRA and the same requirements imposed directly under the Davis-Bacon Act. The most reasonable interpretation of the exemption language is that if federal law requires the Secretary of Labor to make a prevailing wage determination on a project, the State of Illinois will refrain from imposing its own requirements on that project. As such, the Court concludes that the High Speed Rail Project was exempt from the IPWA statutory requirements.

## Conclusion

Because the IPWA does not apply to the project which is the source of Murphy's claim, he cannot meet an essential element of his case, and summary dismissal is warranted. Accordingly, Defendant PTI's Motion for Summary Judgment (Doc. 114) is **GRANTED** and the case is **DISMISSED with prejudice**. All other pending motions are **DENIED as moot.** The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff and to close the case.

**IT IS SO ORDERED.**

DATED: March 1, 2018

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**